### In re LINDERMAN.

(District Court, E. D. Pennsylvania. January 11, 1909.)

#### No. 3,010.

1. BANKRUPTCY (§ 384*)—ADJUDICATION—PROVISIONAL ORDERS—COMPOSITION.
   Where the evidence established bankruptcy, and an order of adjudication was entered without right of the bankrupt to revoke it, a provision of a composition agreement for a provisional order of adjudication will not be approved.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 592; Dec. Dig. § 384.*]

2. BANKRUPTCY (§ 384*)—COMPOSITION—APPROVAL—SCOPE OF ADJUDICATION.
   On the hearing of an application to approve a composition agreement in bankruptcy, the court will not review the part of the agreement dealing with the raising of funds to make payments outside, and which do not come into the estate as an asset for distribution, but is only concerned with the property surrendered to the estate with which to pay creditors in the bankruptcy proceeding.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 592; Dec. Dig. § 384.*]

3. BANKRUPTCY (§ 376*)—COMPOSITION AGREEMENT—VALIDITY.
   Where schedules of a bankrupt showed that he had no property other than that assigned to certain creditors within the four-months period, and the property so assigned was worth much less than the claims of the assignees against him, a composition agreement, approved by a large majority of the creditors, by which $60,000 was raised, $35,000 of which was applied to claims outside of the bankruptcy proceedings, and $25,000 was offered to the estate, together with an assignment of the bankrupt's interest in his grandfather's estate, in consideration of an approval of the bankrupt's assignments, was valid under Bankr. Act July 1, 1898, c. 541, § 27, 30 Stat. 553, 554 (U. S. Comp. St. 1901, p. 3433), providing that the trustee, with the approval of the court, may compromise any controversy arising in the administration of the estate on such terms as he may deem best for its interest.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 598; Dec. Dig. § 376.*]

In Bankruptcy.

---

Edward J. & James W. Fox, for trustee.

Green & Green and Charles M. Leslie, for creditors.

Kirkpatrick & Maxwell and B. F. McAtee, for bankrupt.

HOLLAND, District Judge. Upon the presentation of a petition to the referee for a review of a certain order made by him authorizing the trustee to enter into an agreement of compromise, a certificate was filed in this court setting forth the agreement, a summary of the evidence relating thereto, and a finding of the referee in favor of a compromise in accordance with the provisions of the agreement. An involuntary petition in bankruptcy was filed in Lehigh county on January 16, 1908, and on February 3d an answer was filed denying insolvency, and on April 25th an adjudication in bankruptcy was entered. On May 16th, at the first meeting of creditors, Frank Reeder, Esq., was elected trustee, and on the 18th of the same month he presented a petition to the referee for an order to ratify an agreement which had been previously made for and entered into by a great majority of the creditors on April 21, 1908. On June 5th, after several adjourned meetings of the creditors called for the purpose, by a vote of 62 of the creditors, representing claims amounting to $630,073.38, voting in favor of the compromise, and 7 creditors, representing claims aggregating $138,286.83, voting against it, the order was entered, which has been certified for revision. Represented in this amount favoring the agreement there are holders of an indebtedness amounting to $307,249.57 who are directly benefited by the agreement if carried into effect, leaving an indebtedness in favor of the compromise, held by entirely disinterested parties, amounting to $322,823.81. This also represents about five-sixths of the creditors in number.

This question as to whether it is for the best interest of the estate that this agreement should be ratified was not suddenly presented to the creditors, but ample time was given to them for its consideration, and it received the approval by banks, trust companies, other corporations, and individuals practically upon three different occasions. The agreement, in substance, was approved by the creditors at a meeting before a special referee on April 21, 1908. It was again considered by them on May 16th in connection with the election of a trustee, as Mr. Reeder, who was elected, announced that he would favor the compromise, and there was only $34,514.58 recorded against his election, and subsequently, on May 29th, the agreement was presented before a meeting of creditors, called by the trustee, which was adjourned to May 30th, then to June 4th, and finally on June 5th, when it was approved by the creditors representing, as has been stated, claims amounting to $630,073.38, of which $322,823.81 is held by disinterested parties, as against an aggregate of $138,286.83 opposing the compromise. So that it would seem, as viewed by the great majority of the disinterested creditors, representing in the aggregate a great majority in amount of the claims, after mature deliberation and ample time for a thorough investigation of the facts, that it would be for the best interest of the general creditors to accept the compromise.

The only other question, therefore, to be considered by the court, is whether or not the agreement is lawful and such a one as the court

is authorized to approve. Section 27 of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 553, 554 [U. S. Comp. St. 1901, p. 3433]), provides that:

"The trustee may, with the approval of the court, compromise any controversy arising in the administration of the estate upon such terms as he may deem for the best interest of the estate."

The bankrupt, within four months prior to filing the petition, assigned certain property to the Lehigh Valley National Bank. He also, within four months, assigned an interest in his father's estate to the executors thereof, and a further assignment was made within the four months to the executors of his father's estate of an interest in his grandfather's estate, Asa Packer, deceased. He also assigned a yacht to Warren A. Wilbur within the four months. These assignments, it is alleged, were made for the payment of debts he had previously owed to various parties, and at the time he was living in grand style and generally regarded as a very wealthy man, concerning whom there were no facts or circumstances to indicate to the assignees of these properties that he was insolvent or intended such assignments as a preference.

The schedule filed in the bankruptcy proceedings shows that he has no assets outside of the property assigned. The claim of the Lehigh Valley National Bank amounts to about $325,000, and the property assigned by him is estimated to be worth $100,000, although of doubtful value. The interest which he assigned to the executors of his father's estate is worth about $35,000, less than the claim of that estate against him, and the bankrupt's interest in his grandfather's estate as an asset in the bankrupt's estate is uncertain.

It is with a knowledge of these facts that the compromise was approved by the creditors. Its provisions are set forth in 12 paragraphs, the principal of which are (1) the ratification of all the assignments made by the bankrupt of his property within four months, excepting his interest in his grandfather's estate, which is to be returned to the bankrupt's estate; (2) $60,000 is to be deposited in the Lehigh Valley National Bank, of which only $25,000 is to be used for the bankrupt's estate for the purpose of securing insurance, if possible, on the bankrupt's life for the benefit of the estate, and, if not, to be paid to the trustee to continue alive the insurance now existing on his life, or to be distributed to the creditors; (3) the estate of his father is to waive a right to present its claim for any amount over and above the indebtedness of the father's estate to the bankrupt; and (4) that the claim of the Lehigh Valley National Bank is to be admitted without proof at $325,219.57, less the value of collateral assigned. This much of the agreement is clearly matter which the court may lawfully consider, and, if for the "best interest of the estate," approve.

Much of this agreement will not be approved by this court, especially that part agreeing to a provisional order adjudicating Garrett B. Linderman a bankrupt. The evidence establishes this fact, and it is entered without the right of the bankrupt to revoke it. Twelve thousand dollars of the amount to be raised and deposited is to be paid to the petitioning creditors, which will satisfy their claims in full,

$20,000 to be paid to various attorneys who have rendered professional services in representing their claims and investigating the condition of the bankrupt's affairs, $2,500 to be paid to the referee, and $500 for clerk hire and cost of stenographers, so that $25,000 only is to be paid to the trustee for the benefit of creditors. This, as has been said, was passed upon by the great majority of the creditors after it had been before them for consideration from April 1st to June 5th, and, whether the distribution meets with the favorable consideration of this court or not, I take it that we have nothing to do with that part of the agreement which deals with the raising of funds to make payments outside and which do not come into the estate as an asset for distribution. We are only concerned with the proposition which offers $25,-000 in cash to the bankrupt's estate, and a return thereto of the bankrupt's interest in his grandfather's estate, with the agreement that the assignments of property within four months shall be sanctioned. There is nothing to indicate that this would be an unlawful compromise under section 27 of the bankrupt act. Of the $60,000 raised, only $25,000 is offered to the bankrupt's estate. Twelve thousand dollars of the fund raised is used to pay the petitioning creditors; but this cannot be considered a preference given these creditors by the bankrupt's estate, as urged by those opposing this order. It is a payment out of a fund raised outside of the estate, and while it may be in the interest of those raising this fund to pay these creditors in full, in order that the compromise may be carried out, yet, as there appears nothing illegal in regard to the payment, it can only affect the matter in the weight to be given to those creditors in voting for the approval of the agreement, and in that connection their approval should receive no weight whatever. The provision for the payment of attorneys in connection with the claims presented is in the same position legally considered, and it seems to me it is a matter which the court cannot consider, as the funds for the purpose are not within the possession of the bankrupt's estate.

The only offer made to the estate is the sum of $25,000 and a reassignment of the bankrupt's interest in the grandfather's estate, for which the estate is asked to give up all the property assigned by the bankrupt to various parties within the four months, and that is the proposition in which the general creditors are interested. We think this part of the agreement should be approved by the court. An order will therefore be made approving the agreement, modified as follows: (1) The assignments of property made by the bankrupt to the Lehigh Valley National Bank to be approved by all parties necessary to make the bank's title to the property good. (2) The assignment of the bankrupt's interest in his father's estate to the executors thereof to be approved. (3) The assignment to Warren A. Wilbur also to be approved. (4) An assignment of the interest of the bankrupt in his grandfather's estate to be made to the trustee by all parties interested therein to convey a good title. (5) That $25,000 in cash be paid to Frank Reeder, Esq., for distribution among the creditors, or for such other purpose as they may direct after further consideration. (6) The Lehigh Valley National Bank to be allowed to prove its claim in bankruptcy for the excess over and above the collateral it now holds. The

value of this collateral is to be fixed by the receiver, with the right of any creditor to appeal to court, unless the same can be mutually determined upon and agreed to by the creditors. (7) That the estate of the bankrupt's father is to execute an agreement waiving its right to file a claim against the bankrupt's estate. (8) Any surplus there may be after the payment of debts, interest, and costs, and fees and expenses of the bankrupt's estate, shall be paid to the bankrupt. (9) The indebtedness of the Lehigh Valley National Bank over and above the collateral now held by it is to be admitted, and the bank not to be required to make further proof of the same.

The trustee is directed to carry so much of the agreement into effect as is indicated by the above order.